IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RENTOKIL INITIAL (1896) LIMITED,　　　　　　　Civ. No. 1:12-cv-01307-CL
formerly known as BET Limited,

　　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　　　　　　ORDER

　　　　v.

JELD-WEN, INC., an Oregon corporation,

　　　　　　　Defendant.

_____

CLARKE, Magistrate Judge.

　　　　This matter comes before the court on motions to dismiss for failure to state a claim upon which relief can be granted (#10), filed by defendant Jeld-Wen, Inc.  Oral argument occurred on January 9, 2013 (#26).  Both parties filed written consents to the jurisdiction of a magistrate judge (#27).  For the reasons below, Jeld-Wen's motions are DENIED.

## BACKGROUND

　　　　Plaintiff Rentokil Initial (1896) Limited ("Rentokil"), a United Kingdom company formerly known as BET Limited ("BET"), brings this case against Jeld-Wen, Inc. ("Jeld-Wen), an Oregon corporation.  The Complaint contains five claims for relief.  The first through fourth claims for relief are for tortious interference with economic relations, allegedly by Jeld-Wen in

its contractual relationships with its United Kingdom subsidiaries Jeld-Wen UK, B & P Property ("Property"), and B & P Holdings ("Holdings"). The first claim relates to the economic relationship between Property and BET, under which Property is the tenant and BET is the guarantor of a long-term lease ("the Lease") of commercial property in the United Kingdom. The second claim relates to the economic relationship between Holdings and BET as parties to the purchase agreement for the commercial property, under which Holdings agreed to indemnify BET for its guarantee under the Lease. The third claim relates to the economic relationship between Jeld-Wen UK and BET, under which Jeld-Wen UK is allegedly the tenant under the Lease and BET is the guarantor of the Lease. The fourth claim relates to the economic relationship between Jeld-Wen UK and BET as parties to the purchase agreement. The fifth claim for relief is for promissory estoppel, and arises out of alleged representations by Jeld-Wen to Rentokil that the Lease was Jeld-Wen's responsibility that it would continue to honor, which Rentokil reasonably relied upon to its detriment.

The Complaint alleges a lengthy series of business transactions starting in 1990 and continuing through 2010. The court does not find it necessary to discuss these transactions in detail other than as needed to explain its rulings set forth below. In summary, Rentokil alleges that Jeld-Wen directed Property, the lessee, to breach the Lease. Rentokil asserts that Jeld-Wen took various steps, including liquidation of Property and dissolution of Holdings, to relieve itself of the Lease and preclude any viable claim by Rentokil against Property and Holdings, who had agreed to indemnify BET for any payment as a guarantor under the Lease. Rentokil alleges that these actions constituted tortious interference with an improper purpose and means that damaged Rentokil, who remains liable under the Lease as guarantor and has no viable recourse against the Jeld-Wen UK subsidiaries.

Jeld-Wen denies Rentokil's claims and in particular asserts that it made a proper and necessary business decision to have Property breach the Lease.

## LEGAL STANDARD

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). In answering this question, the court must assume that the plaintiffs' allegations are true and must draw all reasonable inferences in the plaintiffs' favor. See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A complaint need not make "detailed factual allegations," however, "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 - 556 (2007). To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient facts to "raise a right to relief above the speculative level." Id. at 555. That is, plaintiffs must show that their claims are not merely conceivable, but plausible. Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

## DISCUSSION

### I.    First Motion to Dismiss

Jeld-Wen moves to dismiss Rentokil's first, second, third, and fourth claims on the basis that a parent corporation cannot, as a matter of law, be held liable for interfering with the economic relations of its subsidiary. The elements of this tort under Oregon law are: (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with the relationship; (3) by a third

party; (4) accomplished through improper means or for an improper purpose; (5) a casual effect

between the interference and damage to the economic relationship; and (6) damages. McGanty

v. Staudenraus, 321 Or. 532, 535 (1995). Jeld-Wen claims that Rentokil has failed to allege the

third element - that Jeld-Wen is a "third party" as to the four economic relationships in these

claims.

The parties agree that the Oregon Supreme Court has not ruled on the issue of whether a

parent corporation can be held liable as a third party for interfering with the economic

relationships of its subsidiaries. See Mentor Graphics Corp. v. Akar Armagan Ahnet, No. 98-

811-AS, 1999 U.S. Dist. LEXIS 6051, at *7 (D. Or. March 9, 1999) ("[T]he question of whether

a parent can interfere with the contract of its subsidiary is an open question in Oregon"). This

court therefore must make a reasonable determination about how the Oregon Supreme Court

would resolve this issue. Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993).

Courts are split on this issue. Some have held that a parent corporation cannot, as a matter of

law, be held liable for interfering with the economic relations of its subsidiary so long as the

parent controls the subsidiary and the entities have common economic interests. See, e.g., First

Nat'l Bank v. Lustig, 809 F.Supp. 444, 448 (E.D. La. 1992); F.C. Cycles Int'l v. Fila Sport,

S.P.A., 184 F.R.D. 64, 80-81 (D. Md. 1998); Am. Med. Int'l, Inc. v. Giutintano, 821 S.W.2d

331, 336-37 (Tex. App. 1991); Inland Waters Pollution Control., Inc. v. Jigawon, Inc., 05-74785,

2008 WL 205209 (E.D. Mich. Jan. 22, 2008), at *12-13; Perry v. Unum Life Ins. Co. of Am.,

353 F.Supp.2d 1237, 1241 (N.D. Ga. 2005). These courts tend to focus on the issue of control

and conclude that a parent is simply not an outside or third party to the economic relationship of

its subsidiary. Courts in other jurisdictions have held that a parent corporation can be held liable

for interfering with the economic relations of its subsidiary if that corporation employs improper

means or acts with an improper purpose. See, e.g., Boulevard Assocs. v. Sovereign Hotels, 72 F.3d 1029, 1035 (2d Cir. 1995); Bendix Corp. v. Adams, 610 P.2d 24, 31 (Alaska 1980); Phil Crowley Steel Corp. v. Sharon Steel Corp., 782 F.2d 781, 783 (8th Cir. 1986); Waste Conversion Sys. v. Greenstone Indus., 33 S.W.3d 779, 784 (Tenn. 2000); Paglin v. Saztec Int'l, Inc., 834 F.Supp. 1184, 1195-96 (W.D. Mo. 1993). These courts point out that the subsidiaries and parent are separate corporate entities, and state that a parent corporation should not be able to interfere with the economic relationships of its subsidiaries for any reason.

Jeld-Wen urges this court to adopt the former rule. The Oregon Court of Appeals faced this issue in Banaitis v. Mitsubishi Bank, Ltd., 129 Or. App. 371, 382 (1994), but ultimately did not decide it. Jeld-Wen points to different Oregon cases in other contexts to argue that this tort is to protect against interference by outside parties. Jeld-Wen cites McGanty v. Staudenraus, 321 Or. at 536, where the Oregon Supreme Court said that the tort of intentional interference "serves as a means of protecting contracting parties against interference in their contracts from *outside* parties." Jeld-Wen also points to Sizer v. New England Life Ins., 871 F.Supp.2d 1071, 1083 (D. Or. 2012), where Judge Papak of this court granted a summary judgment motion on the basis that a subsidiary could not be a "third party" to an economic relationship between a parent corporation and the plaintiff, an employee of the subsidiary. Judge Papak viewed "a wholly owned subsidiary as a party - rather than a third party - to the economic relationships of its parent company so long as the parent actually controlled the activities of the subsidiary such that they acted as a single enterprise." Id. at 1085. Although the case does not cite it, Jeld-Wen claims that Judge Papak used the reasoning and language set forth in Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 759 (1984), an antitrust case in which the Court addressed the question of whether a parent corporation could be liable for conspiring with a

subsidiary under Section 1 of the Sherman Act.  The court in Copperweld held a parent corporation, as a matter of law, cannot conspire with its wholly-owned subsidiary for purposes of the Sherman Act.  Id.  Jeld-Wen asserts that the Court in Sizer "relied almost entirely upon Copperweld."  Def. Memo in Support of Mot., p. 9.  Jeld-Wen also relies on paragraph 24 of the Complaint, where Rentokil alleges the requisite control by Jeld-Wen over its UK subsidiaries.

Rentokil argues that Sizer's reliance on Copperweld is flawed in that a federal antitrust claim under the Sherman Act is far different than an intentional interference claim that involves issues of improper motive or means under Oregon common law.  Rentokil contends that this court should follow the reasoning of courts that have held that although a parent corporation is not generally liable for interfering with the economic relations of its controlled subsidiaries, it can be if it has an improper purpose or employs improper means, a situation which was not present in the cases relied upon in Jeld-Wen's briefings.  This court agrees.  An example of this type of case, which has some factual similarities to the present case, is Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d. at 1035.  In that case, the plaintiff claimed that the defendant was liable for tortious interference because it directed its subsidiary to "stop paying rent, and thereby to breach the lease."  Id.  The Second Circuit stated that "[c]ourts in other states have uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform," and predicted that the rule would be the same under Connecticut law.  Id. at 1037.  However, the court in Boulevard Associates also held that a parent is not "privileged to employ *any* means, no matter how improper, to induce a breach of a contract involving its own company."  Id.  Thus, a parent corporation could be liable for intentionally interfering with a contract of a subsidiary to the extent it employed wrongful means in doing so, such as "fraud,

misrepresentation, intimidation or molestation." Id. The court in Boulevard Associates did clarify that there would be no improper means when a parent corporation "simply directed its subsidiary, as it could do through the appropriate channels of corporate command, to stop paying the rent." Id. (citations omitted). This reasoning is generally consistent with Judge Frye of this court in Chase v. Weight, CIV. No. 870570-FR, 1988 WL 107051, at *2 (D. Or. Oct. 12, 1988), who summarized her ruling as follows: "No Oregon cases on [the issue of whether a parent corporation may be liable for tortious interference] have been found. The court concludes that since corporations are separate legal entities and ordinarily are to be regarded as such, the better rule is that a parent corporation is not free to tortiously interfere with the contracts between its subsidiaries and third parties." Id.

This court agrees with Judge Frye that this is the better rule and the one likely to be adopted by the Oregon Supreme Court. Judge Frye did point out, like the Boulevard Associates court, that to be wrongful, the interference must be wrongful beyond the interference itself. Id. Judge Frye later in Leaco Enterprises, Inc. v. General Electric Co., 737 F.Supp. 605, 609-610 (D. Or. 1990), denied a summary judgment motion on the grounds that issues of fact existed as to whether a parent corporation used wrongful or improper means to cause a subsidiary to terminate a contract. To prevail in this case, Rentokil will need to prove that Jeld-Wen had an improper purpose or employed improper means in interfering with the economic relations between Jeld-Wen and its subsidiaries, which will need to be more than Jeld-Wen simply directing its subsidiaries to breach contracts that were no longer in the subsidiaries' economic interests to perform. This court finds this to be a reasonable rule that will not unduly hamper parent corporations' ability to manage their subsidiaries while protecting against wrongful conduct. Jeld-Wen's first motion to dismiss is denied.

## II.    Second Motion to Dismiss

Jeld-Wen also moves to dismiss Rentokil's first, second, third and fourth claims on the basis that Rentokil has not alleged facts sufficient to show improper purpose or improper means. Jeld-Wen argues that Rentokil only generally alleges improper purpose and two improper means that are legally insufficient to state a claim.  In paragraph 55 of the Complaint, Rentokil alleges "Jeld-Wen engaged in the continuing course of conduct alleged herein with the intention of rendering B & P Property insolvent such that it was placed into voluntary liquidation without notice to BET and was left incapable of performing the obligations under the lease."  The alleged improper means are set out in paragraph 56:

> The tortious interference of Jeld-Wen was accomplished by improper means because it engaged in the continuing course of conduct alleged herein, including:
>
> (a) failing to provide notice of the Liquidator Meeting to BET in violation of Section 98 of the Insolvency Act 1986 (United Kingdom) and thereby preventing BET from participating in the proceedings; and
> (b) intentionally causing B & P Property to default on the contractual obligations under the Lease, while at the same time permitting itself, and Jeld-Wen UK, to reap the benefits of BET's fulfillment of its part of the contractual bargain under the Lease.

Oregon courts have described in broad terms what constitutes improper means.  Means or motives may be wrongful by reason of a statute or other regulation, a recognized rule of common law, or any established standard of a trade or profession.  Top Shop Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201, 209-210 (1978); Nw. Natural Gas Co. v. Chase Gardens, Inc., 328 Or. 487, 498 (1999).  Also included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation or disparaging falsehood.  Top Shop Body Shop, Inc., 283 Or. at 209-210, n. 11 (citations omitted).

This court is satisfied that Rentokil has adequately alleged a series of specific facts that it contends show improper purpose or means by Jeld-Wen.  This includes, but is not limited to, that

Jeld-Wen directed the liquidation of Property and dissolution of Holdings with a motive to inflict injury on BET. It is unclear whether there will be any evidence that Jeld-Wen directed or was aware that no notice of these proceedings was given to BET. If there is, that could constitute improper means under Oregon law. While the allegation in paragraph 56(b), standing alone, may not constitute improper means, Rentokil asserts that this allegation is part of a "continuing course of conduct." Compl., ¶ 56. Further, in paragraph 57 of the Complaint, Rentokil alleges that Jeld-Wen "engaged in the continuing course of conduct alleged herein with the intent to improperly and solely benefit itself, and Jeld-Wen UK, at the expense of BET, and did so with the intent to cause damage to and inflict injury upon BET." This sufficiently alleges improper purpose. Jeld-Wen is fairly on notice of the allegations to proceed with discovery. It in short remains to be seen if there is evidence of anything other than Jeld-Wen making reasonable and necessary business decisions in a difficult economy.

### III. Third Motion to Dismiss

Jeld-Wen moves to dismiss Rentokil's first claim on the basis that it does not sufficiently allege damage to Rentokil. Jeld-Wen argues lack of causation based on a complicated business transaction in 2007 that allegedly rendered Property and Holdings dormant. This court finds this argument is not proper for a pleading motion. Rentokil has adequately alleged damage based on Jeld-Wen's alleged interference with its economic relationship with Property. Paragraph 59 of the Complaint alleges that "[t]he tortious interference of Jeld-Wen has caused and continues to cause BET to sustain money damages." Rentokil alleges it remains liable on the Lease. It is clear that Jeld-Wen can certainly raise its argument at the dispositive motion stage of the case, but that the present motion to dismiss is premature.

IV.    **Fourth Motion to Dismiss**

Jeld-Wen moves to dismiss Rentokil's third and fourth claims on the basis that Rentokil fails to allege sufficient facts to show an economic relationship between Jeld-Wen UK and BET. The court finds that Rentokil has pled specifically that the trade, assets and liabilities of Property and Holdings were transferred to Jeld-Wen UK through the Jeld-Wen purchase of Rugby Joinery UK that became Jeld-Wen UK.  Compl., ¶ 19.  This is sufficient at the pleading stage.

V.    **Fifth Motion to Dismiss**

Jeld-Wen also moves to dismiss Rentokil's fifth claim for promissory estoppel on the basis that Rentokil has not alleged detrimental reliance.  The court finds that Rentokil has alleged that Jeld-Wen represented that the lease was its responsibility that it would continue to honor. Rentokil alleges that it reasonably relied on this representation by not seeking to renegotiate the lease or pursue legal action to its detriment.  This is sufficient at the pleading stage.

## CONCLUSION

The court carefully considered Jeld-Wen's motions in light of the pleading standard set forth in Twombly and Iqbal.  The Complaint meets this standard.  Jeld-Wen has raised significant issues that will likely arise again at the case's dispositive motion stage.  The court, however, is confident that Jeld-Wen understands the detailed factual allegations, that the court finds plausible, to proceed with discovery.  Jeld-Wen's motions to dismiss (#10) are DENIED. IT IS SO ORDERED.

DATED this _____ day of MARCH, 2013

_____
MARK D. CLARKE
United States Magistrate Judge